1

2

3

4

5

6

7

8               IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DAVID ALLEN NICHOLS,

11              Petitioner,              No. 2:11-cv-368-GEB-EFB P

12       vs.

13   WILLIAM KNIPP,

14              Respondent.              FINDINGS AND RECOMMENDATIONS
                                   /

15

16       Petitioner is a state prisoner without counsel proceeding with an application for a writ of

17   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a 2007 judgment of

18   conviction entered against him in the Placer County Superior Court for failure to register as a sex

19   offender.  In his petition before this court he raises ten grounds for federal habeas relief.  Upon

20   careful consideration of the record and the applicable law, it is recommended that petitioner's

21   application be denied.

     **I.    Background[1]**

22
             This case presented a simple factual question for the jury to
23           resolve – did defendant David Allen Nichols, a convicted sex
             offender required to register under former Penal Code section 290,
24

25       [1]  In its partially published opinion affirming petitioner's judgment of conviction on
     appeal, the California Court of Appeal for the Third Appellate District provided the following
26   factual summary.

                                   1

register with the Rocklin Police Department within five days of moving out of Rocklin?  The jury determined he did not, in violation of former Penal Code section 290, subdivision (f)(1).[2] (See current §290.013, subd. (a).)

The jury also determined, however, that defendant had previously been convicted of three felonies and found true the allegation that these felonies constituted serious felonies within the meaning of the "Three Strikes" law.  (§§ 1170.12, subds. (a)-(d); 667, subd. (b)-(I).)  In addition, the trial court determined defendant had served three prior prison terms within the meaning of section 667.5, subdivision (b).

The trial court denied defendant's motion to strike his prior "strike" convictions, and it sentenced him to a prison term of 28 years to life: 25 years to life on the failure to register, plus one year for each of the prior prison terms.

* * *

Testifying at trial, defendant admitted three prior felony convictions.  He was convicted in 1978 in Oregon of robbery; in 1982 of armed bank robbery, a federal offense; and in 1996 in Humboldt County of forcible oral copulation in violation of section 288a.  Defendant committed this last offense in 1994 while he was on federal parole.

Defendant knew he was required to register under section 290 as a result of his sex offense conviction.  Indeed, when asked if he was aware of his requirement to register, defendant replied, "Yes, pretty deeply actually."  After completing his state prison sentence on the sex crime, he served four more years in prison due to the federal parole violation.  During this incarceration and while serving as the head education clerk, he helped assemble a database of resources inmates could use upon their release.  As part of this process, he specifically researched the registration requirements imposed on him under California law.  He knew he had to register each time he moved.[3]

---

[2]  All subsequent undesignated references to sections are to the Penal Code.

[3]  At the time of defendant's actions here, former section 290 required defendant to register with the chief of police of the city where he was residing within five working days of moving into the city.  (Former § 290, subd. (a)(1)(A); Stats.2004, ch. 761, § 1.3.)  If he moved out of that city, he had to notify his former city's police chief of his new address within five working days, as well as register with the police chief of his new city.  (Former § 290, subd. (f)(1); Stats.2004, ch. 761, § 1.3.)  If he became transient, he had five working days within which to register in the jurisdiction in which he was present on the fifth day, and he had to register once every 30 days in whatever jurisdiction where he was present.  (Former § 290, subd. (a)(1)(C)(I);

2

Defendant was released from custody in November 2004.  Dayna Ward, a federal parole officer, supervised defendant.  She had supervised him briefly in 1994 when he was first placed on federal parole.  She met with defendant upon his release from state prison in 2004 and reviewed with him a notice of requirements for sex offender registration.  Defendant signed the form, and Officer Ward directed him to register within five days.

Officer Ward also reviewed with defendant his conditions of parole.  One of those conditions required defendant to notify his parole officer within two days of any change of his residence.  Another condition prohibited defendant from leaving or moving out of the boundaries of the federal judicial Eastern District of California without prior approval from a parole officer.

In December 2004, upon his release from custody, defendant registered in Sacramento, the city where he lived.  He registered again in Sacramento on January 24, 2005, upon changing his address.  He registered in Sacramento a third time upon his birthday, February 15, 2005, as required by former section 290.

In early March 2005, defendant moved to a new residence on Aitken Dairy Road in Rocklin.  He leased his Rocklin residence along with five other tenants: Eliza Edwards; defendant's business partner, Jim Dresser; a Russian couple; and the homeowner's father.

Upon moving to Rocklin, defendant registered with the Rocklin Police Department.  He also informed Officer Ward of his new address.  (There was no record, however, that he notified the Sacramento Police Department of his move to Rocklin.  Defendant was not charged with this omission.)

In early April 2005, defendant left the Eastern District without permission from his parole officer and he moved out of the Rocklin house.  On or about April 4, defendant told cotenant Edwards he had had an altercation with Dresser, and he asked if she would take care of his cat.  He said he had to go and that he would be back. She heard him leave on his motorcycle.  She never saw him again at the house.

Defendant testified that he drove to Big Sur, looked at the ocean, and then decided to go back.  On April 7, 2005, he went into the parole office to speak with Officer Ward.  She was on vacation, so he met with her supervisor, Officer Richard Ertola.  He told Officer Ertola he had left the district on April 4.  Officer Ertola

Stats.2004, ch. 761, § 1.3.)  Defendant also had to register annually within five working days of his birthday, regardless of where he was living.  (Former § 290, subd. (a)(1)(C)(iii), (a)(1)(D); Stats.2004, ch. 761, § 1.3.)

3

took the violation under advisement, and he told defendant to
contact Officer Ward on April 18.

However, defendant testified that after meeting with Officer
Ertola, he got on his motorcycle and left.  He never went back to
Rocklin. He also had no further contact with Officer Ward.

Defendant drifted around the country, attending shows and
festivals, and "hiding out with the hippies."  He was arrested on
December 31, 2005, in San Francisco.  He gave a false name to the
police when he was arrested because, he said, he knew he had
violated his parole.

The factual dispute at trial, which the jury decided against
defendant, centered on whether defendant complied with his
section 290 registration requirements when he "moved" from his
Rocklin residence.  Clerks from the Rocklin Police Department
identified defendant's registration dated March 14, 2005, which
defendant filed when he moved to Rocklin.  One of the clerks who
reviewed defendant's registration that day, Deeann Ralphs, noticed
he had not provided any information about vehicles he owned.
Defendant said he did not own any, so she wrote "NA" on the
form.  She would not have written NA unless he had told her he
did not own any vehicles.

Ralphs, who was the police department's custodian of records, said
defendant did not register again with the Rocklin police
department because there were no additional registration forms in
the file. Defendant had submitted a copy of his lease for the Aitkin
Dairy Road residence, but there were no records in the file
indicating defendant had changed his address after March 14,
2005.

Defendant, however, testified he returned to the Rocklin police
department twice after registering there on March 14, both times in
response to the clerks' request that he provide proof of his
residence and vehicle information.  On the first occasion, he went
in without an appointment to drop off a copy of his lease
agreement.

The second occasion occurred in April right before he left for Big
Sur.  He claimed that on this visit, he completed a form to provide
the department with the vehicle identification number from his
motorcycle.  Where the form asked for his address, defendant
wrote his Aitkin Dairy Road address and then wrote the words "in
transit" after it.  He gave the completed form to a clerk and left.
He did not receive a copy of the form.  It was defendant's
understanding that writing the word "transit" on the form satisfied
his obligation to inform the police department of his move out of
Rocklin since he did not know where he would be living and he
would be transient.

4

1
2
3
4
> On the prosecution's rebuttal, department clerk Ralphs testified
> that a registrant who is moving and is going to become transient
> must note that information on a form. She also stated that
> registrants always receive a copy of their completed registration
> forms. The two other clerks who worked for the department
> testified they had not processed any paperwork for defendant
> regarding his move out of Rocklin.

5 Resp't's Lodg. Doc. 4 (Opinion) at 2-8.

6      After the California Court of Appeal affirmed petitioner's judgment of conviction, he

7 filed a petition for review in the California Supreme Court in which he raised all of the claims

8 contained in the petition before this court.[4]  Resp't's Lodg. Doc. 5 (Pet. for Review).  That

9 petition was summarily denied.  Resp't's Lodg. Doc. 6.

10 **II.   Analysis**

11     **A.  Standards for a Writ of Habeas Corpus**

12      An application for a writ of habeas corpus by a person in custody under a judgment of a

13 state court can be granted only for violations of the Constitution or laws of the United States. 28

14 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or

15 application of state law.  *See Wilson v. Corcoran*, 562 U.S.___, ___, 131 S. Ct. 13, 16 (2010);

16 *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir.

17 2000).

18      Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

19 corpus relief:

20
21
22
> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court shall
> not be granted with respect to any claim that was adjudicated on
> the merits in State court proceedings unless the adjudication of the

23
24
25
26
   [4] In the instant petition, petitioner raises a claim of ineffective assistance of trial counsel but notes that the claim has not been exhausted in state court. Pet. at 5. Petitioner's motion for a stay of these proceedings in order to exhaust his claim of ineffective assistance of counsel was denied and petitioner did not renew his motion for a stay. Accordingly, petitioner's claim of ineffective assistance of counsel is not properly before the court and petitioner is not entitled to relief on any such claim. *See* 28 U.S.C. § 2254(b)(1) (an application for a writ of habeas corpus shall not be granted unless the petitioner has exhausted the remedies available in state court).

1          claim -

2                (1) resulted in a decision that was contrary to, or involved
   an unreasonable application of, clearly established Federal law, as
3   determined by the Supreme Court of the United States; or

4                (2) resulted in a decision that was based on an unreasonable
   determination of the facts in light of the evidence presented in the
5   State court proceeding.

6          For purposes of applying § 2254(d)(1), "clearly established federal law" consists of

7   holdings of the United States Supreme Court at the time of the state court decision.  *Stanley v.*

8   *Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (*citing Williams v. Taylor*, 529 U.S. 362, 405-06

9   (2000)).  Nonetheless, "circuit court precedent may be persuasive in determining what law is

10   clearly established and whether a state court applied that law unreasonably."  *Stanley*, 633 F.3d

11   at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)).

12          A state court decision is "contrary to" clearly established federal law if it applies a rule

13   contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

14   precedent on "materially indistinguishable" facts.  *Price v. Vincent*, 538 U.S. 634, 640 (2003).

15   Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant

16   the writ if the state court identifies the correct governing legal principle from the Supreme

17   Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[5]

18   *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360

19   F.3d 997, 1002 (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ

20   simply because that court concludes in its independent judgment that the relevant state-court

21   decision applied clearly established federal law erroneously or incorrectly.  Rather, that

22   application must also be unreasonable."  *Williams*, 529 U.S. at 412.  *See also Schriro v.*

23   *Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal

24

25          [5]  Under § 2254(d)(2), a state court decision based on a factual determination is not to be
   overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
   presented in the state court proceeding."  *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*,
26   384 F.3d 628, 638 (9th Cir. 2004)).

                                              6

habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S.___,___,131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*,131 S. Ct. at 786-87.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington*, 131 S. Ct. at 784-85. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Where the state court reaches a decision on the merits but provides no reasoning to

1   support its conclusion, a federal habeas court independently reviews the record to determine

2   whether habeas corpus relief is available under § 2254(d).  *Stanley*, 633 F.3d at 860; *Himes v.*

3   *Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).   "Independent review of the record is not de novo

4   review of the constitutional issue, but rather, the only method by which we can determine

5   whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853.

6   Where no reasoned decision is available, the habeas petitioner still has the burden of "showing

7   there was no reasonable basis for the state court to deny relief." *Harrington*, 131 S. Ct. at 784.

8          When it is clear, however, that a state court has not reached the merits of a petitioner's

9   claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

10  habeas court must review the claim de novo.  *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462

11  F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook,* 333 F.3d 1052, 1056 (9th Cir. 2003).[6]

12         **B.  Petitioner's Claims**

13                **1.        Erroneous Admission of Evidence**

14         In his first ground for relief, petitioner claims that the trial court violated his right to due

15  process when it admitted "excessive, inflammatory and irrelevant" evidence at his trial.  ECF

16  No. 1 (Pet.) at 4.  Specifically, he argues that the trial court improperly admitted evidence, or

17  allowed evidence to be "leaked," of his "anti-social history," which "mislabeled [him] as 'child

18  molester' talked about parole violations for absconding, etc – creating a bad and malignant

19  'character' which the jury reacted to." *Id.*; Pet. for Review at 6.

20         The California Court of Appeal denied petitioner's claim regarding the erroneous

21  admission of inflammatory evidence, reasoning as follows:

22                *Admission of Excessive and Inflammatory Evidence*

23                Defendant claims he suffered a denial of due process when the trial
                  court admitted excessive, inflammatory, or propensity evidence.

24

25         [6]  The United States Supreme Court has recently granted certiorari in a case apparently to
     consider this issue.  *See Williams v. Cavazos*, 646 F.3d 626, 639-41 (9th Cir. 2011), *cert. granted*
26   *in part*, ___U.S.___, 132 S. Ct. 1088 (2012).

He specifically targets: (1) the parole officers' testimony regarding their explaining the registration requirements to him, disclosing his parole status to the jury, and testifying that he absconded from parole; (2) the court's failure to sanitize a certification of registration prepared by the Department of Justice and admitted into evidence that disclosed his underlying sex conviction as possibly being an act against a minor; (3) the court's refusal to admit evidence that defendant's listing in a public data base as a child molester was error; and (4) the court's denial of his motion for a mistrial due to Dresser's statement while on the stand that he had received death threats after changing the locks at the house. Defendant also claims these errors were cumulative.  We review each contention.

A. *Parole officers' testimony*

Defendant claims the testimony of Officers Ward and Ertola was excessive, prejudicial, and improperly used to establish propensity. He asserts their testimony was not needed to show his knowledge of the registration requirements or that he left Rocklin, as those elements were established by clerks from the Rocklin Police Department and his former roommates.  Also, the officers' titles as parole officers and their official forms could have been sanitized. Using the federal parole violation to show he left Rocklin was, in his words, "prejudicial overkill."

To prove a violation of section 290, the prosecutor had to establish, among other points, that defendant actually knew he was required to register within five days of his move out of his Rocklin residence.  (Former § 290, subd. (b).)  Officer Ward's testimony that she informed him of his registration requirements was relevant to establishing this element.  That the Rocklin Police Department clerk also gave defendant a form with the same information on it the following year did not render Officer Ward's testimony cumulative.  Both witnesses' testimony was relevant to establishing actual knowledge.

The prosecutor also had to establish that defendant moved from Rocklin.  Officer Ertola's testimony that defendant told him he left Rocklin with the intent not to return was relevant to establishing this element.  Although this was an admission by defendant of absconding from parole, it was not unduly prejudicial, as its probative value outweighed any prejudicial impact it may have had on the jury.  As the trial court noted, if defendant absconded from parole, he could not argue that he did not change his address.

Defendant also faults this evidence because the prosecutor allegedly used it to argue propensity, i.e., that defendant's willingness to violate parole makes his assertion of complying with registration requirements unbelievable.  We will address this argument below as one of prosecutorial misconduct.

9

B.  *Sanitization of underlying sex offense evidence*

Defendant faults the trial court for refusing to sanitize the Department of Justice's certification of his registration history. The document listed defendant's sex offense as a violation of section "288a(c)," "oral copulation with person under 14/etc or by force/etc." Defendant claims the document unfairly suggested to the jury that his offense involved a child when in fact it did not. The crime was one of force against an adult, in violation of section 288a(c)(2).

The parties stipulated that the offense would be referred to only as a felony sex offense requiring registration. The prosecution also agreed to defendant's request to redact the conviction information on the registration form. The trial court, however, refused defendant's request. It admitted the form unredacted but subject to an instruction that the jury not consider the form's conviction and release information.

The court did not abuse its discretion in admitting the form in its original state. The court's instruction was adequate to remove the potential for undue prejudice. By following the admonition, the jurors would not have considered defendant's crime may have been against a child. We assume jurors follow admonitions given them. (*People v. Kegler* (1987) 197 Cal.App.3d 72, 80.)

C.  *Evidence of defendant's listing as a child molester*

Officer Ertola testified that defendant told him he left the district on April 4 because he became upset over an incident that occurred with his coworkers at work. On cross-examination, defense counsel wanted to inquire about what had happened at defendant's work. Counsel asked Officer Ertola: "What upset [defendant] was given the fact that his prior sex offense involved a 30-year-old adult female, the Megan's Law listed [*sic*] him as a child molester caused him to be upset?" The prosecutor objected to the question due to the parties' stipulation about the nature of the predicate offense. The trial court sustained the objection.

Defendant argues the trial court erred when it sustained the objection. He claims Officer Ertola's answer to the question was admissible under Evidence Code section 356.[7] That statute makes admissible any other conversation which is necessary to make a

---

[7] Evidence Code section 356 reads: "Where part of an act, declaration, conversation, or writing is given in evidence by one party, the whole on the same subject may be inquired into by an adverse party; when a letter is read, the answer may be given; and when a detached act, declaration, conversation, or writing is given in evidence, any other act, declaration, conversation, or writing which is necessary to make it understood may also be given in evidence."

detached conversation previously admitted into evidence understood.  As the issue at trial was defendant's credibility, defendant asserts he was entitled to introduce the remainder of Officer Ertola's conversation with him in order to blunt the implication that he was a child molester, and to explain that he left town for substantial reasons and not due to criminal propensity.

Due to the court's sustaining of the objection, there was no implication to blunt.  Officer Ertola said nothing that implied defendant was a child molester.  The court did not err in sustaining the objection.

Assuming for purposes of argument only that the evidence should have been admitted, we would find defendant suffered no prejudice from the trial court's upholding the objection.  Instead of hearing defendant's statements on this issue through Officer Ertola's testimony, the jury heard the same evidence directly from defendant when he testified, and it still found him guilty.

Defendant explained to the jury what caused him to leave the district.  When he arrived at work in late march, his cubicle was plastered with posters of his listing on Megan's List as a child offender.  His sex offense had originally been mislabeled as one against a child, when in fact it was not.  This and other factors led him to abscond.  He explained all of these problems to Officer Ertola when he returned.

Thus, the jury heard the same evidence the court would not allow Officer Ertola to discuss, and it nonetheless convicted defendant.  The court committed no prejudicial error by sustaining the objection to defendant's question to Officer Ertola.

D.  *Denial of motion for mistrial*

Defendant argues the trial court erred when it denied his motion for a mistrial based on a statement defendant's former business partner and roommate, Jim Dresser, made during his testimony at trial.  We disagree.

Prior to trial, the prosecutor stated he would not delve into details of a personal conflict between defendant and Dresser, and the trial court so ordered.  During trial, the prosecutor asked Dresser if defendant at some point stopped living at the Aitkin Dairy Road residence.  The dialog continued:

"A.  Yes.  I believe it was around the 15th of April.

"Q.  And how do you know that he stopped living there?

"A.  Because we changed the lock on the doors, and I tried to file a police report and eventually – I started to get some death threats

11

1    and I tried to –

2    "[DEFENSE COUNSEL]:  Objection.

3    "THE COURT:  Sustained.

4    "[THE PROSECUTOR]:  I don't want to go into any of that.  I am
     just trying to understand time lines.
5
     "A.  Right."
6
     Minutes later and outside the jury's presence, defense counsel
7    moved for a mistrial, claiming Dresser's reference to death threats
     implicated defendant and prejudiced the jury.
8
     The trial court denied the motion but it offered to strike the
9    testimony at defense counsel's request.  Counsel refused.  That
     discussion went as follows:
10
     "THE COURT:  Well, first of all, I don't know that [Dresser's
11   testimony] was a clear inference that it was the responsibility of
     [defendant].  The testimony stands on its own.  I didn't get that
12   impression necessarily.  The objection was made, which I
     sustained.  There was no request to strike the answer.  I can strike
13   the answer later on it you wish to do so in front of the jury. [¶]
     From a tactical standpoint, I take it you wanted to simply object
14   and I sustained the objection.  If you want me to go back and tell
     the jury to forget that part of the testimony of Mr. Dresser which
15   dealt with death threats, I will do that, but that is a tactical decision
     you have to make as to whether or not you want to emphasize it.
16
     "[DEFENSE COUNSEL]:  I am not going to punctuate it any
17   more.

18   "THE COURT:  I understand, and however it does appear that Mr.
     Dresser was acting on his own when he blurted out that statement.
19   So – but I find it not harmful.  So I am going to deny the request
     for mistrial.
20
     The court did not abuse its discretion in denying the motion for
21   mistrial.  It reasonably concluded Dresser's comment did not cause
     incurable prejudice.  The comment was not expressly referenced
22   towards defendant.  It is not clear the jury would have interpreted
     it as referencing defendant.  The court sustained the objection, and
23   it offered to strike the comment and to admonish the jury to
     disregard it.  Defendant rejected that option.  The trial court did not
24   abuse its discretion in denying the motion under these
     circumstances.
25

26   Opinion at 8-15.

1    As set forth above, petitioner claims that the trial court violated his right to due process

2 when it admitted into evidence the testimony of parole officers Ward and Ertola and the

3 unredacted copy of the Department of Justice's certification of his registration history, and when

4 it refused to grant his motion for mistrial after Jim Dresser testified about receiving death threats.

5    A writ of habeas corpus will be granted for an erroneous admission of evidence "only

6 where the 'testimony is almost entirely unreliable and . . . the factfinder and the adversary

7 system will not be competent to uncover, recognize, and take due account of its shortcomings.'"

8 *Mancuso v. Olivarez*, 292 F.3d 939, 956 (9th Cir. 2002) (quoting *Barefoot v. Estelle*, 463 U.S.

9 880, 899 (1983)).  Evidence violates due process only if "there are no permissible inferences the

10 jury may draw from the evidence."  *Jammal*, 926 F.2d at 920.  Evidence must "be of such quality

11 as necessarily prevents a fair trial."  *Id.* (quoting *Kealohapauole v. Shimoda*, 800 F.2d 1463 (9th

12 Cir. 1986)).

13    Even so, as the Ninth Circuit has observed:

14    The Supreme Court has made very few rulings regarding the
admission of evidence as a violation of due process.  Although the

15    Court has been clear that a writ should be issued when
constitutional errors have rendered the trial fundamentally unfair

16    (citation omitted), it has not yet made a clear ruling that admission
of irrelevant or overtly prejudicial evidence constitutes a due

17    process violation sufficient to warrant issuance of the writ

18 *Holley*, 568 F.3d at 1101.  Therefore, "under AEDPA, even clearly erroneous admissions of

19 evidence that render a trial fundamentally unfair may not permit the grant of federal habeas

20 corpus relief if not forbidden by 'clearly established Federal law,' as laid out by the Supreme

21 Court."  *Id.  See also Greel v. Martel*, No. 10-16847, 472 Fed.Appx. 503, 504, 2012 WL 907215,

22 *1 (9th Cir. Mar. 19, 2012) ("There is likewise no clearly established federal law that admitting

23 prejudicial evidence violates due process.").

24    According to these authorities, the state court's rejection of petitioner's claim that the

25 trial court violated his right to due process in allowing the admission of overly prejudicial

26 information does not support habeas relief under AEDPA.  The admission of testimony from

13

1   parole officers Ward and Ertola, the admission of the unredacted certification of registration, and

2   Jim Dresser's testimony about death threats did not violate any clearly established federal law.

3   Nor has petitioner demonstrated that the admission of the challenged evidence rendered his trial

4   fundamentally unfair.  The evidence was not "entirely unreliable" and the jury was certainly

5   "competent to uncover, recognize, and take due account of its shortcomings."  *Mancuso*, 292

6   F.3d at 956.  This court also notes that the testimony of officers Ward and Ertola and the

7   certification of registration were relevant to demonstrate elements the prosecution was required

8   to prove in order to support a guilty finding on the charges against petitioner.  These were

9   "permissible inferences the jury may draw from the evidence."  *Jammal*,  926 F.2d at 920.

10          Petitioner also claims that the trial court violated his right to due process by preventing

11   Officer Ertola from answering the question whether petitioner was upset because his name had

12   appeared on a "Megan's Law" list of child molesters.  He argues that the trial court's exclusion

13   of Officer Ertola's answer prevented him from explaining to the jury that he was not a child

14   molester.  The United States Supreme Court has not "squarely addressed" whether a state court's

15   exercise of discretion to exclude testimony violates a criminal defendant's right to present

16   relevant evidence.  *Moses v. Payne*, 555 F.3d 742, 758-59 (9th Cir. 2009).  Accordingly, the

17   decision of the California Court of Appeal upholding the trial court's evidentiary ruling is not

18   contrary to or an unreasonable application of clearly established United States Supreme Court

19   precedent and may not be set aside.  *Id.  See Wright v. Van Patten,* 552 U.S. 120, 126 (2008) (per

20   curiam) (relief is "unauthorized" under Section 2254(d)(1) when the Supreme Court's decisions

21   "given no clear answer to the question presented, let alone one in [the petitioner's] favor,"

22   because the state court cannot be said to have unreasonably applied clearly established Federal

23   law).  *See also Anguiano v. Morales*, No. C 98-4751 SI(PR), 2000 WL 630870 at *9 (N.D. Cal.

24   May 2, 2000) (trial court's exercise of discretion under Cal. Evid. Code § 1252 to exclude

25   untrustworthy evidence did not violate defendant's right to present a defense).

26   /////

1    In any event, as noted by the California Court of Appeal, petitioner explained to the jury

2  that he left the district because his coworkers thought he had been convicted of child

3  molestation, when in fact his crime had been perpetrated against an adult.  Opinion at 12.

4  Petitioner himself provided the testimony that Officer Ertola would have given had the

5  prosecutor's objection not been sustained.  Therefore, even assuming *arguendo* that the trial

6  court's sustaining of the prosecutor's objection was constitutional error, the error could not have

7  had a "substantial and injurious effect or influence in determining the jury's verdict" under the

8  circumstances of this case.  *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).

9    For all of the foregoing reasons, the decision of the California Court of Appeal rejecting

10  petitioner's claims of evidentiary error was not contrary to or an unreasonable application of

11  clearly established Federal law.  Accordingly, petitioner is not entitled to relief on these claims.

12                **2.    Prosecutorial Misconduct**

13    In his next ground for relief, petitioner claims that the prosecutor committed misconduct

14  during his closing argument when he improperly "constructed an image of [petitioner] that was

15  unfairly malignant and ugly and evil."  Pet. at 4; Pet. for Review at 9-10.

16    The California Court of Appeal denied this claim, reasoning as follows:

17        Defendant claims the prosecutor committed misconduct in his
          closing argument.  He asserts the prosecutor unlawfully argued
18        that defendant's prior acts of absconding from parole and failing to
          register in Sacramento when he moved to Rocklin demonstrated
19        that defendant failed to register when he left Rocklin.  Defendant
          raised no objection to the prosecutor's argument at trial.  His
20        failure to object and seek an admonition forfeits his claim here.
          (*People v. Wash* (1993) 6 Cal.4th 215, 265.)
21
          Even were we to consider the claim on its merits or as a claim of
22        ineffective assistance of counsel, we would conclude the
          prosecutor did not commit misconduct and the defendant suffered
23        no prejudice.  It is clear from the record that the prosecutor was not
          arguing propensity.  He was arguing credibility.  He informed the
24        jury to consider very carefully defendant's credibility, because "it
          is the only evidence in this case that supports a finding of not
25        guilty.  It's the only evidence.  It stands completely alone."

26

                                    15

The prosecutor spent the rest of his argument talking about credibility.  As part of that argument, the prosecutor stated the circumstantial evidence showed defendant was not being truthful in his testimony.  Defendant had "a very strong motive to leave Rocklin, to get out of there," the prosecutor said.  "Things were not going well.  People were accusing him of being some kind of pervert.  That's not my word, but his.  People were accusing him and the business wasn't going well, and he takes off, despite the federal parole.  Off he goes.  Yet he wants us to believe that the 290 law is something that he holds sacred."  The prosecutor did not argue in this statement that because defendant had violated parole, he therefore failed to register.  Rather, the prosecutor argued the parole violation went to defendant's credibility.  That argument is not misconduct.

The prosecutor made a similar argument regarding defendant's apparent failure to register with Sacramento upon his move to Rocklin.  The prosecutor stated defendant's past was relevant to determining whether defendant was telling the truth in this trial.  Emphasizing that point, the prosecutor asked rhetorically whether defendant, who claimed to follow section 290 rigorously, thought it more important to register in April when he left Rocklin than in March when he left Sacramento.  Again, this point did not go to propensity.  It challenged the credibility of defendant's claim that he registered in April when he left Rocklin.  The prosecutor did not commit misconduct in his closing argument.

Opinion at 15-17.

As set forth above, the California Court of Appeal concluded that petitioner's claim of prosecutorial misconduct was waived because of petitioner's failure to object to the prosecutor's closing argument at the time it was made.  Respondent argues that the state court's finding of waiver constitutes a state procedural bar precluding this court from addressing the merits of this claim.  ECF No. 28 (Answer) at 18-19.

State courts may decline to review a claim based on a procedural default.  *Wainwright v. Sykes*, 433 U.S. 72 (1977).  As a general rule, a federal habeas court "'will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'"  *Calderon v. United States District Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).  The state rule is only "adequate" if it is "firmly

1  established and regularly followed."  *Id.*  (quoting *Ford v. Georgia*, 498 U.S. 411, 424 (1991));

2  *Bennett v. Mueller*, 322 F 3d 573, 583 (9th Cir. 2003) ("[t]o be deemed adequate, the state law

3  ground for decision must be well-established and consistently applied.")  The state rule must also

4  be "independent" in that it is not "interwoven with the federal law."  *Park v. California*, 202

5  F.3d 1146, 1152 (9th Cir. 2000) (quoting *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983)).

6  Even if the state rule is independent and adequate, the claims may be heard if the petitioner can

7  show:  (1) cause for the default and actual prejudice as a result of the alleged violation of federal

8  law; or (2) that failure to consider the claims will result in a fundamental miscarriage of justice.

9  *Coleman*, 501 U.S. at 749-50.

10       Respondent has met his burden of adequately pleading an independent and adequate state

11  procedural ground as an affirmative defense.  *See Bennett*, 322 F.3d at 586.  Petitioner does not

12  deny that his trial counsel did not raise a contemporaneous objection to the prosecutor's closing

13  argument.  Although the state appellate court addressed petitioner's claim on the merits, it also

14  expressly held that the claim was waived on appeal because of defense counsel's failure to

15  object.  Petitioner has failed to meet his burden of asserting specific factual allegations that

16  demonstrate the inadequacy of California's contemporaneous-objection rule as unclear,

17  inconsistently applied or not well-established, either as a general rule or as applied to him.

18  *Bennett*  322 F.3d at 586; *Melendez v. Pliler*, 288 F.3d 1120, 1124-26 (9th Cir. 2002).

19  Petitioner's claim of prosecutorial misconduct therefore appear to be procedurally barred.  *See*

20  *Coleman*, 501 U.S. at 747; *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Fairbank v. Ayers*,

21  650 F.3d 1243, 1246-47 (9th Cir. 2011) ("We have held that California consistently applies its

22  contemporaneous objection rule when a party fails to object to the admission of evidence");

23  *Paulino v. Castro*, 371 F.3d 1083, 1092-93 (9th Cir. 2004).  Petitioner has also failed to

24  demonstrate that there was cause for his procedural default or that a miscarriage of justice would

25  /////

26  /////

17

1    result absent review of the claim by this court.  *See Coleman*, 501 U.S. at 748; *Vansickel v.*

2    *White*, 166 F.3d 953, 957-58 (9th Cir. 1999).  However, for the reasons discussed below, even if

3    this claim was not procedurally barred, it lacks merit and should be denied.

4         A defendant's due process rights are violated when a prosecutor's misconduct renders a

5    trial fundamentally unfair.  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  Prosecutorial

6    misconduct violates due process when it has a substantial and injurious effect or influence in

7    determining the jury's verdict.  *See Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996).

8    In considering claims of prosecutorial misconduct involving allegations of improper argument

9    the court must examine the likely effect of the statements in the context in which they were made

10   and determine whether the comments so infected the trial with unfairness as to make the

11   resulting conviction a denial of due process.  *Turner v. Calderon*, 281 F.3d 851, 868 (9th Cir.

12   2002); *Sandoval v. Calderon*, 241 F.3d 765, 778 (9th Cir. 2001); *see also Donnelly v.*

13   *DeChristoforo*, 416 U.S. 637, 643 (1974); *Darden*, 477 U.S. at 181-83.  In fashioning closing

14   arguments, prosecutors are allowed "reasonably wide latitude," *United States v. Birges*, 723 F.2d

15   666, 671-72 (9th Cir. 1984), and are free to argue "reasonable inferences from the evidence."

16   *United States v. Gray*, 876 F.2d 1411, 1417 (9th Cir. 1989).  *See also Duckett v. Godinez*, 67

17   F.3d 734, 742 (9th Cir. 1995).  However, prosecutors "may not, of course, employ argument

18   which could be fairly characterized as foul or unfair."  *United States v. Gorostiza*, 468 F.2d 915,

19   916 (9th Cir. 1972).

20        This court agrees with the conclusion of the California Court of Appeal that any

21   misconduct by the prosecutor that occurred in connection with his closing argument was

22   harmless.  The prosecutor's remarks were designed to support his argument that petitioner lacked

23   credibility when he stated he rigorously followed the requirements of California's registration

24   law.  Viewed in the context in which they were made, the prosecutor's remarks did not portray

25   petitioner as "unfairly malignant and ugly and evil," as petitioner argues.  Pet. at 4.  The

26   prosecutor's closing argument was not prejudicial to the point of denying petitioner a fair trial.

18

1   *Darden*, 477 U.S. at 181; *Turner*, 281 F.3d at 868; *Rodrigues*, 159 F.3d at 449-51; *Williams*, 139

2   F.3d at 745.  *Cf. Dubria v. Smith*,  224 F.3d 995, 1004 (9th Cir. 2000) (prosecutor's reference to

3   defense argument as "a piece of garbage" and defendant as "a liar" not improper); *Williams*, 139

4   F.3d at 744-45 (prosecutor's reference to defense argument as "trash" not improper).

5   Accordingly, petitioner is not entitled to relief on his claim of prosecutorial misconduct.

6                   **3.      Cumulative Error**

7           In his next ground for relief, petitioner claims that the cumulative effect of the errors

8   described in grounds one and two, discussed above, deprived him of his right to a fair trial.  Pet.

9   at 5.  The California Court of Appeal denied this claim, reasoning that "because we find the

10  court did not commit prejudicial error, there is no cumulative error from these evidentiary

11  matters."  Opinion at 15.

12          The United States Court of Appeals for the Ninth Circuit has concluded that under clearly

13  established United States Supreme Court precedent, the combined effect of multiple trial errors

14  may give rise to a due process violation if it renders a trial fundamentally unfair, even where

15  each error considered individually would not require reversal.  *Parle v. Runnels*, 505 F.3d 922,

16  927 (9th. Cir. 2007) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) and *Chambers*

17  *v. Mississippi*, 410 U.S. 284, 290 (1973)).  *See also Hayes v. Ayers*, 632 F.3d 500, 524 (9th Cir.

18  2011) (if no error of constitutional magnitude occurred at trial, "no cumulative prejudice is

19  possible").  "The fundamental question in determining whether the combined effect of trial

20  errors violated a defendant's due process rights is whether the errors rendered the criminal

21  defense 'far less persuasive,' *Chambers*, 410 U.S. at 294, and thereby had a 'substantial and

22  injurious effect or influence' on the jury's verdict."  *Parle*, 505 F.3d at 927 (quoting *Brecht*, 507

23  U.S. at 637).

24          This court has addressed petitioner's claims raised in grounds one and two and has

25  concluded that no error of constitutional magnitude occurred.  This court also concludes that the

26  alleged errors, even when considered together, did not render petitioner's defense "far less

19

1    persuasive," or have a "substantial and injurious effect or influence on the jury's verdict."

2    Accordingly, petitioner is not entitled to relief on his claim of cumulative error.

3              **4.      Jury Instruction Error**

4              Petitioner raises several claims of jury instruction error.  After setting forth the applicable

5    legal principles, the court will address these claims in turn below.

6              **a.      Legal Standards**

7              In general, a challenge to jury instructions does not state a federal constitutional claim.

8    *Engle v. Isaac*, 456 U.S. 107, 119 (1982)); *Gutierrez v. Griggs*, 695 F.2d 1195, 1197 (9th Cir.

9    1983).  In order to warrant federal habeas relief, a challenged jury instruction "cannot be merely

10   'undesirable, erroneous, or even "universally condemned,"' but must violate some due process

11   right guaranteed by the fourteenth amendment." *Cupp v. Naughten*, 414 U.S. 141, 146 (1973).

12   To prevail on such a claim petitioner must demonstrate "that an erroneous instruction 'so

13   infected the entire trial that the resulting conviction violates due process.'" *Prantil v. State of*

14   *Cal.*, 843 F.2d 314, 317 (9th Cir. 1988) (quoting *Darnell v. Swinney*, 823 F.2d 299, 301 (9th Cir.

15   1987)).  In making its determination, this court must evaluate the challenged jury instructions

16   "'in the context of the overall charge to the jury as a component of the entire trial process.'" *Id.*

17   (quoting *Bashor v. Risley*, 730 F.2d 1228, 1239 (9th Cir. 1984)).  Where the challenge is to a

18   refusal or failure to give an instruction, the petitioner's burden is "especially heavy," because

19   "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement

20   of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).  *See also Villafuerte v. Stewart*, 111

21   F.3d 616, 624 (9th Cir. 1997).

22   /////

23   /////

24   /////

25   /////

26   /////

1

        **b.**      **<u>Overbroad Instruction on Failure to Report Changes in</u>**
                        **<u>Transient Locations</u>**

2

3         Petitioner argues that the trial court violated his right to due process when it instructed

4 the jury "on a new theory of failure to report changes in transient locations," thereby denying

5 him "due process of law, a fair trial, the right to notice of charges, and the right to a jury

6 determination on all issues."  Pet. for Review at 12-14.

7         The California Court of Appeal explained the background to this claim and its decision

8 thereon, as follows:

9         A.  *Overbroad instruction*

10         Defendant claims the court's instruction on the elements of section
           290 presented the jury with an alternative theory to convict that
11         had not been pleaded.  Considering the instructions' entire charge,
           we conclude the instruction was not in error.

12

13         The trial court informed the jury that the People had to prove:

14         "1.  The defendant was previously found to have committed a sex
           offense which requires registration;

15         "2.  The defendant resided in the City of Rocklin, Placer County,
           California;

16

17         "3.  a.  That the defendant registered as a sex offender with the
           Police Chief of the City of Rocklin; and

18         "3.  b.  The defendant actually knew he had a duty to inform the
           Police Chief of the City of Rocklin that he was moving within 5
19         working days of the move;

20         "AND

21         "4.  The defendant willfully failed to inform the Chief of Police of
           the Rocklin Police Department within five working days of
22         changing his residence address *or transient location . . .*"  (Italics
           added.)

23

24         Defendant claims the alternative reference at the end of paragraph
           four to moving from a transient location allowed the jury to decide
           the case on grounds other than those charged.  He testified at trial

25

26

that he never registered again after leaving Rocklin.[8]  He asserts that under the instruction, the jury could have found him guilty for failing to register while he was transient even if it concluded he had in fact registered with Rocklin upon his moving from the city.

"[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction."  (*People v. Burgener* (1986) 41 Cal.3d 505, 528, *disapproved on other grounds* in *People v. Reyes* (1998) 19 Cal.4th 743, 750-751.)  Moreover, we are to assume that jurors are intelligent and capable of understanding, correlating, and following all given jury instructions.  (*People v. Kegler, supra*, 197 Cal.App.3d at p. 80.)

Defendant's argument ignores the instruction's entire charge.  The instruction centers on defendant residing in Rocklin and his requirement to register upon moving from his Rocklin residence.  Because the prosecution had to prove that defendant resided in Rocklin, the jury could not convict under this instruction on evidence that defendant was transient, i.e., did not reside in any particular place.

Defendant's argument also misjudges the jurors' capacity to recognize this case hinged on defendant residing in Rocklin, and their ability to understand that the jury instruction was based solely on that contention.  Not only this instruction, but the entire case rested on defendant having resided in, and moved from, Rocklin, and whether he notified Rocklin of his move from that city.  (Former § 290, subd. (f)(1); Stats. 2004, ch. 761, § 1.3.)  The jury would have interpreted this instruction correctly.

Most likely, the trial court was attempting to incorporate defendant's defense into the instruction.  In light of his claim that he became transient upon leaving Rocklin, the court was requiring the prosecution to prove defendant failed to register upon becoming transient.  In so doing, the trial court did not instruct on an uncharged theory, and it committed no error in giving the instruction.

Opinion at 17-19.

Viewing the challenged jury instruction in the context of the jury instructions as a whole, this court agrees with the California Court of Appeal that the instruction on the elements of Cal.

---

[8]  We note that although defendant was not charged with failing to register as a transient during the time he was transient, this statement by him constituted an admission of violating section 290.  At a minimum, the jury could have considered this statement as going to his credibility on the charged offense.

1  Penal Code § 290 given at petitioner's trial did not violate petitioner's constitutional rights.  As

2  noted by the state appellate court, petitioner's entire trial was structured around the charge that

3  he failed to report his move from Rocklin.  To that end, the jury instruction challenged by

4  petitioner focused on petitioner's move from Rocklin and required the prosecution to prove that

5  petitioner lived in, and move from, Rocklin.  Under these circumstances, there is no reasonable

6  likelihood the jury understood the instruction to be concerned with petitioner's failure to report

7  his transient locations(s).  Nor is there any evidence that the jury understood the instruction in

8  this way, or understood it to be adding an additional charge against petitioner, or a change in the

9  charges already brought.  Under the circumstances presented here, petitioner has failed to show

10  that the giving of this instruction rendered his trial fundamentally unfair.  Accordingly, petitioner

11  is not entitled to relief on this jury instruction claim.

12                    c.    **Unanimity Instruction**

13          In his next claim for relief, petitioner argues that the trial court's failure to give a

14  "unanimity instruction," in light of the addition of the additional charge against him, as alleged

15  in the claim above, violated his right to "due process and a jury determination on all issues."

16  Pet. for Review at 15.  Petitioner argues that the jurors may have improperly relied on the

17  uncharged theory of liability to find him guilty of the charged crimes.  *Id.* at 15-16.  The

18  California Court of Appeal rejected this argument with the following reasoning:

19          B.  *Unanimity instruction*

20          Next, defendant claims the court was required to give a unanimity
            instruction because it instructed on an alternate theory of the
21          crime, as just discussed.  Because we conclude the court did not
            instruct on an alternate theory, the court was not required to give a
22          unanimity instruction.  The only question presented to the jury by
            the prosecutor's argument and the instructions was whether
23          defendant registered with the Rocklin Police Department within
            five days of moving from his residence in Rocklin.  No unanimity
24          instruction is required where there is only one theory of guilt.  (*See
            People v. Meyer* (2003) 108 Cal.App.4th 403, 418.)

25

26  Opinion at 19-20.

                                      23

1  Because this court also concludes that petitioner's jury was not improperly instructed on

2  a new theory of liability by virtue of the jury instruction on the elements of Cal. Penal Code

3  § 290, the trial court's failure to give a unanimity instruction did not violate petitioner's right to

4  due process.  As stated by the California Court of Appeal, there is no reason to give an

5  instruction on unanimity when only one theory of guilt is presented to the jury.  Accordingly,

6  petitioner is not entitled to relief on this claim.

7  **d.**   **False Statement Instruction**

8  In his next claim, petitioner argues that the trial court violated his right to due process by

9  giving "a false statement instruction."  Pet. for Review at 17.  The California Court of Appeal

10  rejected this argument, reasoning as follows:

11  C.  *False statement instruction*

12  Defendant faults the court for giving the jury CALCRIM No. 362
regarding the evidentiary value of false statements made by the
13  defendant.  He claims the evidence of his giving a false name to
police upon his arrest did not relate to the charged offense, but
14  rather went only to the federal parole violation.  His interpretation
of the statement's meaning, however, is not the test for
15  determining whether to give the instruction.

16  As given by the trial court, the instruction read: "If the defendant
made a false or misleading statement relating to the charged crime,
17  knowing the statement was false or intending to mislead, that
conduct may show he was aware of his guilt of the crime and you
18  may consider it in determining his guilt.  [¶]  If you conclude that
the defendant made the statement, it is up to you to decide its
19  meaning and importance.  However, evidence that the defendant
made such a statement cannot prove guilt by itself."

20
The trial court has a sua sponte duty to instruct on consciousness
21  of guilt when there is evidence that the defendant intentionally
made a false statement from which such an inference could be
22  drawn.  (*People v. Atwood* (1963) 223 Cal.App.2d 316, 333-334,
*disapproved on another ground* in *People v. Carter* (2003) 30
23  Cal.4th 1166, 1197-1198.)

24  Defendant admitted giving a false name to police when he was
arrested in San Francisco.  An inference of guilt could be drawn
25  from that statement.  He was avoiding being caught because he
knew he had not registered.  The court thus had a duty to instruct
26  on the statement.

24

Defendant, however, testified he gave a false name because he had absconded from federal parole.  He claimed he had no idea there was a state warrant issued for his failure to register because "I had notified them that I was going to be in transit."

Defendant's testimony does not eliminate the inference that defendant gave a false name also because he knew he had failed to register.  Because defendant made a statement from which an inference of guilt could be drawn, the court had a duty to instruct sua sponte on the possible effect of defendant's false statement, no matter what defendant subjectively believed the statement meant.  As the instruction states, it is for the jury to decide the false statement's meaning and importance.  But because defendant made a false statement from which an inference of guilt of failing to register can be made, the trial court was mandated to give the instruction.  It committed no error in doing so.

Opinion at 20-21.

Petitioner has failed to show that the instruction given to his jury on the evidentiary value of making a false statement so infected the entire trial that his conviction violates due process. Informing the jury that if they found petitioner made a false statement they could consider it in determining his guilt of the charged crime did not render petitioner's conviction fundamentally unfair, especially where the jurors were also instructed that it was up to them to determine the meaning and importance of the false statement and that the statement could not, by itself, prove petitioner's guilt of the charged crime.  In addition, as noted by the California Court of Appeal, petitioner's false statement at the time of his arrest was relevant to show that he was aware he had not registered as a sex offender.  In short, petitioner has failed to demonstrate that the giving of this jury instruction rose to the level of a due process violation.  Accordingly, he is not entitled to relief on this claim.

### 5.   Insufficient Evidence of Prior Conviction Allegations

Petitioner's next claim is that the evidence is insufficient to support the trial court's finding that his prior felony convictions constituted serious or violent felonies for purposes of sentencing under California's Three Strikes Law.  Pet. for Review at 18-23.  He also claims the evidence was insufficient to support the prior prison term sentence enhancement allegations.  *Id.*

The California Court of Appeal denied these claims with the following reasoning:

*Evidence Supporting Prior Serious Felony Convictions*

As mentioned above, defendant at trial admitted three prior felony convictions: a 1978 Oregon conviction for robbery; a 1982 federal conviction for armed bank robbery, and a 1996 conviction in Humboldt County for forcible oral copulation in violation of section 288a.  Defendant asserts insufficient evidence supports the jury's finding that each of these convictions constituted serious/violent felonies for purposes of the Three Strikes law. After reviewing the evidence supporting each strike conviction, we disagree.

A. *1996 California oral copulation conviction*

Defendant claims the evidence supporting his conviction for oral copulation by force, by definition a serious felony, does not eliminate the possibility he was convicted of oral copulation that was accomplished against the victim's will by threats of future retaliation, a former possible element of violating section 288a, subdivision (c), that is not considered to be a serious felony.  (*See People v. Towers* (2007) 150 Cal.App.4th 1273, 1277.)  He also claims it was not until 2006 that forcible oral copulation was deemed a "violent" or "serious" felony for purposes of Three Strikes.  Defendant is wrong on both counts.

First, there is no doubt defendant was convicted of committing oral copulation with force.  Although the original abstract of judgment stated he was convicted of violating section 288a(c), "Oral Cop/under 14," the trial court later ordered the abstract corrected to show he was convicted of "Oral Copulation With Force, PC § 288a(c)(2)."

In addition, the court's minute order states defendant was convicted of oral copulation "w/person under 14 or w/force." Also, the information filed against defendant charged him with one count of oral copulation with force, in violation of section 288a(c). This is ample evidence to support the jury's strike finding on the 1996 oral copulation conviction.

Second, defendant is mistaken when he states oral copulation with force was not a serious felony until 2006.  Oral copulation with force was listed as a "violent felony" under section 667.5, subdivision (c)(5), and as a "serious felony" under section 1192.7, subdivision (c) (5), as early as 1976.  (*People v. Nava* (1996) 47 Cal.App.4th 1732, 1735-1736, fn. 4; § 667.5, subd. (c) (5); Stats. 1976, ch. 1139, § 268, p. 5138; § 1192.7, subd. (c) (5), added by Initiative Measure (Prop. 8, § 7, approved June 8, 1982.).)

/////

26

B.  *1982 federal armed bank robbery conviction*

Defendant contends insufficient evidence supports the jury's determination that his 1982 federal armed bank robbery conviction constituted a serious felony.  We disagree.

Defendant in 1982 pleaded guilty to armed bank robbery.  At the time he entered his plea, he admitted being armed when he robbed the bank.  Specifically, the court asked him: "Part of the charge is that the bank robbery was an armed robbery.  Will you tell me about that; was it armed?

"[DEFENDANT]: I was holding a model 66 357 caliber pistol.

"THE COURT: You were?

"[DEFENDANT]: Yes."

This evidence supports the jury's determination that defendant committed a robbery and was personally armed, both strikes under California law.  (§§ 667.5, subd. (c)(8),(9); 1192.7, subd. (c)(8), (19).)

C.  *1978 Oregon robbery conviction*

Defendant claims insufficient evidence supports the jury's determination that his 1978 robbery conviction in Oregon constituted a California strike.  He asserts his guilty plea to the indictment does not establish that he personally used a weapon to commit the crime, or that the crime was not performed by an accomplice.  We conclude the evidence is sufficient to support a finding of a serious felony.

Defendant in 1978 pleaded guilty in Oregon to the following acts, as charged by the indictment: that he, "acting together with Grant Edward Conklin, did unlawfully and knowingly threaten the immediate use of physical force upon Richard Remington Miller by holding a knife to Richard Remington Miller's throat, and was armed with a dangerous weapon, to wit: a knife, while in the course of committing theft of property, to wit: 1956 Chevrolet pickup truck and United States currency, with the intent of preventing resistance to the said defendants' taking of the said property . . . ."

Although the language indicates defendant did not act alone, it clearly indicates defendant was party to what is defined as a robbery under California law, "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his well, accomplished by means of force or fear."  (§ 211)  Moreover, the indictment specifically alleges it was defendant who was armed with a knife and held it

27

against the victim's throat at the time of the robbery.  Such acts constitute serious and violent felonies for purposes of California's Three Strikes law.  (§§ 667.5, subd. (c)(9); 1192.7, subd. (c)(19).)  This is sufficient evidence to support the determination that defendant committed what is the equivalent of a robbery under California law, and thus a serious felony for purposes of Three Strikes.

V.

*Evidence Supporting Prior Prison Term Determinations*

Defendant claims the evidence supporting the two foreign prison term determinations is inadequate as it failed to prove defendant actually served one year in prison for each conviction, a requirement for imposing the enhancement based on foreign prison terms.  (§ 667.5, subd. (f).)  We conclude there is substantial evidence to support the determinations.

At the enhancement allegations trial, the trial court relied on the certified court documents provided by the prosecutor and on defendant's testimony from his trial on the merits.  Regarding the Oregon conviction, defendant admitted at trial that he was convicted in Oregon of robbery.  The certified documents confirmed defendant's testimony.  Also, evidence from the federal armed bank robbery action recorded that defendant there stated he had served his sentence for the Oregon crime in an Oregon penitentiary for three years.  This is sufficient evidence to support the trial court's determination that defendant served at least one year in prison for the Oregon conviction.

Regarding the 1982 federal armed bank robbery conviction, defendant admitted at trial that he was convicted of this crime.  He was sentenced to 25 years in prison.  On recross-examination, he testified that "in '93 I got out.  Then I got back into the federal system for a parole violation.  Then I got out in 94."  Officer Ward testified she oversaw defendant on parole in 1994.

A release from parole supports an inference that defendant's period of incarceration had been completed before his parole period began.  (*People v. Crockett* (1990) 222 Cal.App.3d 258, 263-266.)  Defendant's statement that he got out in 1993 suggests he served at least 11 years in prison for the armed bank robbery.  His violation of parole implies he had been placed on parole in 1993, which in turn suggests his period of incarceration was completed in 1993.  This is sufficient evidence on which the trial court could conclude defendant served at least one year in prison for his federal armed bank robbery conviction.

/////

28

1     Defendant asserts we cannot rely on his admissions at trial because
2     doing so amounts to relitigating the priors, or it forces us to rely on
    "unduly unreliable evidence" to support the facts.  We disagree
3     with his claim.  "The testimony [concerning the priors] was given
    during the trial of the underlying charge. [Defendant] cites no
4     authority to support his claim that evidence from the trial on the
    underlying offense cannot be considered at the trial on the
5     subsequent enhancement allegations.  To preclude the court from
    considering evidence properly before it during another part of the
6     trial would be unnecessarily rigid and would hamper, rathen than
    further, the interests of justice."  (*People v. Elmose* (1990) 225
7     Cal.App.3d 953, 957.)

8 Opinion at 22-27.

9        Habeas corpus relief is unavailable for alleged errors in the interpretation or application

10 of state sentencing laws by either a state trial or appellate court, unless the error resulted in a

11 complete miscarriage of justice.  *Hill v. United States*, 368 U.S. 424, 428 (1962); *Hendricks v.*

12 *Zenon*, 993 F.2d 664, 674 (9th Cir. 1993); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir.

13 1985).  So long as a state sentence "is not based on any proscribed federal grounds such as being

14 cruel and unusual, racially or ethnically motivated, or enhanced by indigency, the penalties for

15 violation of state statutes are matters of state concern."  *Makal v. State of Arizona*, 544 F.2d

16 1030, 1035 (9th Cir. 1976).  Thus, "[a]bsent a showing of fundamental unfairness, a state court's

17 misapplication of its own sentencing laws does not justify federal habeas relief."  *Christian v.*

18 *Rhode*, 41 F.3d 461, 469 (9th Cir. 1994).

19        Applying these principles in federal habeas proceedings, the Ninth Circuit Court of

20 Appeals has specifically refused to consider alleged errors in the application of state sentencing

21 law.  *See, e.g., Miller v. Vasquez*, 868 F.2d 1116 (9th Cir. 1989).  Thus, in *Miller*, the court

22 refused to examine the state court's determination that a defendant's prior conviction was for a

23 "serious felony" within the meaning of the state statutes governing sentence enhancements.  *Id.*

24 at 1118-19.  The court did not reach the merits of the petitioner's claim, stating that federal

25 habeas relief is not available for alleged errors in interpreting and applying state law.  *Id.*

26 (quoting *Middleton*, 768 F.2d at 1085).

1    Whether or not a prior conviction properly constitutes a "serious" or "violent" felony, as

2  that term is defined in California's Three Strikes Law, and whether the service of prior foreign

3  prison terms falls within the Three Strikes Law, involves interpretation of state sentencing law.

4  Federal courts are "bound by a state court's construction of its own penal statutes," *Aponte v.*

5  *Gomez*, 993 F.2d 705, 707 (9th Cir. 1993), and this court must defer to the California courts'

6  interpretation of the California Three Strikes Law unless its interpretation is "untenable or

7  amounts to a subterfuge to avoid federal review of a constitutional violation." *Oxborrow v.*

8  *Eikenberry*, 877 F.2d 1395, 1399 (9th Cir. 1989.)  There is no evidence of that here.

9    In any event, petitioner's sufficiency of the evidence claims lack merit.  For the reasons

10  set forth by the California Court of Appeal, and considering all of the evidence before the

11  sentencing judge in this case, this court also concludes that there was sufficient evidence to

12  support petitioner's sentence enhancement allegations.  *See Jackson v. Virginia*, 443 U.S. 307,

13  319 (1979) (there is sufficient evidence to support a conviction if, "after viewing the evidence in

14  the light most favorable to the prosecution, any rational trier of fact could have found the

15  essential elements of the crime beyond a reasonable doubt."); *Boyer v. Belleque*, 659 F.3d 957,

16  964 (9th Cir. 2011) (when a federal habeas court assesses a sufficiency of the evidence challenge

17  to a state court conviction under AEDPA, "there is a double dose of deference that can rarely be

18  surmounted.").  *See also Dretke v. Haley*, 541 U.S. 386, 395 (2004) ("But the constitutional hook

19  in *Jackson* was *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), in which we

20  held that due process requires proof of each element of a criminal offense beyond a reasonable

21  doubt.  We have not extended *Winship's* protections to proof of prior convictions used to support

22  recidivist enhancements.").

23    **6.    Sixth Amendment Right to Jury Trial**

24    Petitioner's next claim is that his Fourteenth Amendment right to due process and his

25  Sixth Amendment right to trial by jury were violated when the trial court, and not the jury, found

26  that his prior convictions resulted in qualifying prison terms and constituted "serious felonies"

30

for purposes of California's Three Strikes Law.  Pet. for Review at 24.  He argues that the trial

court's actions in making findings outside of the bare fact that he suffered these prior convictions

"goes far beyond any *Cunningham* prior conviction exception and violates state and federal rules

limiting proof to the prior records."  *Id.* at 25.

The California Court of Appeal rejected petitioner's arguments in this regard, reasoning

as follows:

> Defendant contends the trial court denied him his federal
> constitutional right to a jury trial on the prior serious felony
> conviction findings and the prior prison term findings.  We
> disagree.
>
> Trial on the prior conviction issues was bifurcated.  Regarding the
> prior serious conviction allegations, the jury received documentary
> evidence on defendant's three prior convictions, along with
> instructions to decide whether the evidence proved defendant had
> been convicted of the alleged crimes.  The jury found the
> allegations were true.
>
> As to the prior prison term allegations, however, the trial court
> determined that no issues regarding those allegations had to be
> submitted to the jury.  At sentencing, it found the prior prison term
> allegations were true.
>
> Defendant asserts he had a federal constitutional right under
> *Cunningham v. California* (2007) 549 U.S. 270 [166 L.Ed.2d 856]
> (*Cunningham*) to have all of the issues regarding the prior
> conviction allegations, including the determination of whether the
> prior convictions constituted serious felonies for purposes of the
> Three Strikes Law, and prior prison terms determined by the jury.
>
> This court has already rejected that argument with regards to prior
> conviction allegations.  (*People v. Jefferson* (2007) 154
> Cal.App.4th 1381, 1386-1389 (*Jefferson*).)  We repeat our holding
> in that case here:
>
> "In *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d
> 435] (*Apprendi*) the United States Supreme Court held,
> recognizing its prior decision in *Almendarez-Torres v. United
> States* (1998) 523 U.S. 224 [140 L.Ed.2d 350] (*Almendarez-
> Torres*) that: 'Other than the fact of a prior conviction, any fact
> that increases the penalty for a crime beyond the prescribed
> statutory maximum must be submitted to a jury, and proved
> beyond a reasonable doubt.'  (*Apprendi, supra*, 530 U.S. at p. 490
> [147 L.Ed.2d at p. 455].)

"In [*People v. McGee* (2006) 38 Cal.4th 682 (*McGee*)], the California Supreme Court considered whether *Apprendi* compelled the conclusion that a criminal defendant has a right under the federal Constitution to have a jury examine the record of a prior criminal proceeding to determine whether the nature of the earlier conviction subjects the defendant to an increased sentence under the applicable sentencing statutes. (*Id.* at pp. 685-686.)  The Supreme Court reviewed a number of its prior decisions (*id.* at pp. 692-695, 699-700), reviewed *Apprendi* (*id.* at pp. 695-699), recognized numerous cases have interpreted the *Almendarez-Torres* exception for recidivism as not being 'limited simply to the bare fact of a defendant's prior conviction, but extend[ing] as well to the nature of that conviction' (*id.* at p. 704, italics omitted), and observed that under California law, the inquiry involved in determining the nature of a prior conviction 'is a limited one [that] must be based upon the record of the prior criminal proceeding.' (*Id.* at p. 706.)  Based on the 'significant difference between the nature of the inquiry and the factfinding involved in the type of sentence enhancements at issue in *Apprendi* and its progeny as compared to the nature of the inquiry involved in examining the record of a prior conviction to determine whether that conviction constitutes a qualifying prior conviction for purposes of a recidivist sentencing statute,' the California Supreme Court concluded there was no federal constitutional right to a jury trial as to whether a prior conviction qualified as a serious felony under California law.  (*Id.* at p. 709.)  The court stated 'the examination of court records pertaining to a defendant's prior conviction to determine the nature or basis of the conviction' was 'a task to which *Apprendi* did not speak and "the type of inquiry that judges traditionally perform as part of the sentencing function."' (*Ibid.*, italics omitted.)

"In *Blakely [v. Washington* (2004) 542 U.S. 296 [159 L.Ed.2d 403], the United States Supreme Court reiterated its holding in *Apprendi, supra*, 530 U.S. 466, 490, that, '"[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."' (*Blakely v. Washington, supra*, 542 U.S. at p. 301 [159 L.Ed.2d at p. 412].)  In *Cunningham, supra*, 549 U.S. 270 [166 L.Ed.2d 856], the United States Supreme Court repeated again: 'Except for a prior conviction, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."' (*Cunningham, supra*, at p. ___ [166 L.Ed.2d at p. 873].)  Thus, the United States Supreme Court continues to recognize the *Almendarez-Torres* exception for recidivism.  As the California Supreme Court's analysis in *McGee, supra*, 38 Cal.4th 682, rested largely on such exception, we believe it remains good authority even after *Blakely* and *Cunningham*." (*Jefferson, supra*, 154 Cal.App.4th at pp. 1386-1389.)

Regarding the prior prison term findings, there was no constitutional right to a jury trial on a section 667.5 allegation under pre-*Cunningham* law.  In *People v. Thomas* (2001) 91 Cal.App.4th 212 (*Thomas*), the Court of Appeal determined the *Almendarez-Torres* jury trial exception for prior convictions referred broadly to recidivism enhancements, and specifically to prior prison term allegations under section 667.5.  (*Thomas, supra*, at pp. 222-223.)

Similarly, in *People v. Belmares* (2003) 106 Cal.App.4th 19, the Court of Appeal determined a defendant did not have a constitutional right to a jury trial on the issue of whether he was the person whose name appeared on the section 696b packet admitted into evidence to show he had served prior prison terms for purposes of section 667.5.  It held the right to a jury trial on prior conviction allegations derives from state statute, not the federal Constitution.  (*Id.* at p. 27.)

As we found in *Jefferson*, *Cunningham* did not overrule the *Almendarez-Torres* exception.  Nothing in *Cunningham* limits the prior conviction exception to the narrow finding of the existence of a prior conviction.  And, since *Cunningham*, the California Supreme Court has cited *Thomas* with approval to emphasize the prior conviction exception is to be read broadly to include allegations based on recidivism.  (*See People v. Towne* (2008) 44 Cal.4th 63, 79-81; *People v. Black* (2007) 41 Cal.4th 799, 819.)

For these reasons, *Thomas* remains good authority after *Cunningham*.  Accordingly, defendant did not have a federal constitutional right to have the section 667.5 allegations heard by a jury.

However, defendant continues to have a limited statutory right to a jury trial on section 667.5 allegations under sections 1025 and 1158.  (*People v. Winslow* (1995) 40 Cal.App.4th 680, 687.)  The trial court did not recognize and enforce that right here.  A trial court's failure to provide a jury trial for section 667.5 allegations in violation of section 1025 is subject to harmless error analysis under *People v. Watson* (1956) 46 Cal.2d 818, 836.  (*People v. Epps* (2001) 25 Cal.4th 19, 29.)

Applying the *Watson* test, we conclude it is not reasonably probable that a result more favorable to defendant would have been reached if a jury, instead of the court, had determined that defendant served two prior prison terms in foreign jurisdictions lasting at least one year.  The evidence is indisputable that defendant served prison terms of more than one year for both the Oregon robbery conviction and the federal armed bank robbery conviction.  A jury thus would not have reached a different conclusion.

1   Opinion at 27-32.

2          A criminal defendant is entitled to a trial by jury and to have every element necessary to

3   sustain his conviction proven by the state beyond a reasonable doubt.  U.S. CONST. amends. V,

4   VI, XIV.  In *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), the United States Supreme

5   Court held that the Due Process Clause of the Fourteenth Amendment requires any fact other

6   than a prior conviction that "increases the penalty for a crime beyond the prescribed statutory

7   maximum" to be "submitted to a jury and proved beyond a reasonable doubt."  In *Blakely v.*

8   *Washington*, 542 U.S. 296, 303-04 (2004), the Supreme Court decided that a defendant in a

9   criminal case is entitled to have a jury determine beyond a reasonable doubt any fact that

10  increases the statutory maximum sentence, unless the fact was admitted by the defendant or was

11  based on a prior conviction.  In *Cunningham v. California*, 549 U.S. 270 (2007), the Supreme

12  Court held that California's Determinate Sentencing Law (DSL) violates a defendant's right to a

13  jury trial to the extent it permits a trial court to impose an upper term based on facts found by the

14  court rather than by a jury.  The Ninth Circuit has held that *Cunningham* may be applied

15  retroactively on collateral review.  *Butler v. Curry*, 528 F.3d 624, 639 (9th Cir. 2008).

16         In *Almendarez-Torres v. United States*, 523 U.S. 224, 239-47 (1998), the United States

17  Supreme Court held that the fact of a prior conviction does not have to be determined by a jury

18  before a sentencing court may rely upon the conviction as the basis for a sentencing

19  enhancement.  Rather, prior convictions may be found by the judge based on a preponderance of

20  evidence.  *Id.* at 239-47; *see also United States v. Medina-Villa*, 567 F.3d 507, 520 (9th Cir.

21  2009) ("*Almendarez-Torres* remains good law").  The task of determining the precise contours of

22  the "narrow" *Almendarez-Torres* prior convictions exception "has been left to the federal

23  appellate courts."  *Kessee v. Mendoza-Powers*, 574 F.3d 675, 677 (9th Cir. 2009) (holding that

24  the state court's use of a finding that the petitioner was on probation at the time of the offense to

25  increase his sentence was not contrary to clearly established federal law).

26  /////

1       In California, various sentencing statutes provide for a longer prison sentence if the

2  defendant has had prior serious or violent felonies denoted as strikes.  Under California law, the

3  inquiry to determine whether a prior conviction qualifies under California's various sentencing

4  enhancement statutes is the responsibility of the court, and not a jury.  *People v. Kelii*, 21 Cal.4th

5  452, 456 (1999) ("Determining whether a prior conviction qualifies as a strike under the Three

6  Strikes law is also the type of inquiry that judges traditionally perform as a part of the sentencing

7  function.").  Furthermore, as petitioner acknowledges, the California Supreme Court has held

8  that a court conducting such an inquiry does not violate *Apprendi*.  *People v. McGee*, 38 Cal.4th

9  682, 687 (2006).

10       Here, the California Court of Appeal concluded that in imposing the sentence on

11  petitioner, the trial court was entitled to determine whether petitioner's prior convictions were

12  qualifying felonies for purposes of the Three Strikes Law without submitting those issues to the

13  jury.  The United States Supreme Court has not defined the exact scope of the *Almendariz-*

14  *Torres* prior conviction exception.  Accordingly, there is no "clearly established" United States

15  Supreme Court authority holding that a trial court may not make findings outside the bare fact of

16  a defendant's commission of a prior conviction.  *See United States v. Santiago*, 268 F.3d 151,

17  156 (2d Cir. 2001)  (". . . In short, we read *Apprendi* as leaving to the judge, consistent with due

18  process, the task of finding not only the mere fact of previous convictions but other related issues

19  as well.  Judges frequently must make factual determinations for sentencing, so it is hardly

20  anomalous to require that they also determine the "who, what, when, and where" of a prior

21  conviction"); *Bird v. Brown*, No. C05-02454 MJJ, 2008 WL 793827 at *5 (N.D. Cal. Mar. 21,

22  2008) ("there is nothing in *Apprendi* or other Supreme Court precedent that requires a trial court,

23  for purposes of sentence enhancement, to treat disputed facts surrounding a prior conviction

24  differently from the basic fact of the prior conviction").  Petitioner has not cited any United

25  States Supreme Court case which holds that the *Almendariz-Torres* prior conviction exception

26  does not encompass the Three Strikes matters found by the trial court in this case.  Accordingly,

1   he has failed to demonstrate that the decision of the California Court of Appeal was contrary to,

2   or an unreasonable application of federal law.  *See Boyd v. Newland* , 467 F.3d 1139, 1152 (9th

3   Cir. 2006) ("in the absence of explicit direction from the Supreme Court, we cannot hold that the

4   California courts' use of Petitioner's juvenile adjudication as a sentencing enhancement was

5   contrary to, or involved an unreasonable application of, Supreme Court precedent.").

6         In any event, to the extent the trial court violated petitioner's Sixth Amendment rights in

7   connection with petitioner's sentence, any error is harmless.  *See Washington v. Recuenco*, 548

8   U.S. 212, 218-22 (2006) (*Apprendi* errors are subject to harmless error analysis).  Petitioner is

9   entitled to habeas relief only upon a showing that the violation of his constitutional rights had a

10   "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht*, 507 U.S.

11   at 623.  As explained above, this court has determined that sufficient evidence supported the trial

12   court's finding that petitioner's prior convictions constituted "serious" and "violent felonies for

13   purposes of the Three Strikes Law, and that petitioner served at least one year in prison on each

14   of those felonies.  Based on the record before the trial court, as described by the California Court

15   of Appeal, there is no doubt that a jury would have found petitioner's prior convictions were

16   "serious" or "violent" felonies and that he had served the requisite prison sentences on those

17   prior convictions.  Accordingly, the result would have been the same if these issues had been

18   submitted to the jury.  Any error by the trial judge in sentencing petitioner under the Three

19   Strikes law was harmless.

20         Petitioner also claims that the cumulative effect of the jury instruction and *Apprendi*

21   errors at his trial deprived him of a fair trial, in violation of his right to due process.  Pet. for

22   Review at 26.  The California Court of Appeal denied this claim on the grounds that "our

23   discussion rejecting all of defendant's claims but one and finding on that one no prejudicial error

24   demonstrates there was no cumulative error."  Opinion at 32.  This court has also addressed

25   petitioner's jury instruction and sentencing claims and has concluded that no error of

26   constitutional magnitude occurred.  The court concludes that the alleged errors, even when

considered together, did not render petitioner's defense "far less persuasive," nor did they have a

"substantial and injurious effect or influence on the jury's verdict." *Chambers*, 410 U.S. at 294.

Accordingly, petitioner is not entitled to relief on this claim of cumulative error.

### 7.    Denial of Motion to Strike Prior Strike Allegations

Petitioner's next claim is that the trial court abused its discretion when it denied his

motion to dismiss one or more of his prior felony "strike" convictions  in the furtherance of

justice at the time of his sentencing.  Pet. for Review at 27.  He explains that one of the reasons

he left Rocklin was his distress over "false website records he was a child molester impacting his

home and work alike – records he had been trying to correct for years." *Id.* at 29.  Petitioner

states that this situation is "not likely to recur (especially if care is taken to correct the Megan's

Law records)." *Id.* at 30.  Petitioner also argues that the Three Strikes sentence that resulted

from the trial judge's decision not to strike any of his prior conviction allegations constituted

cruel and unusual punishment. *Id.* at 27.  He argues: "in sum, the overall picture of this offender

and his offenses falls outside the spirit of the Three Strikes law, at least in part." *Id.* at 30.

The California Court of Appeal rejected these arguments, reasoning as follows:

*Denial of Motion to Strike Prior Strikes*

Defendant claims the trial court abused its discretion when it
denied his *Romero*[9] motion to strike one of his prior serious felony
convictions.  He asserts his situation places him outside the spirit
of the Three Strikes law.  We conclude the court did not abuse its
discretion.

Deciding defendant's motion, the trial court was required to
"consider whether, in light of the nature and circumstances of his
present felonies and prior serious and/or violent felony
convictions, and the particulars of his background, character, and
prospects, the defendant may be deemed outside the scheme's
spirit, in whole or in part, and hence should be treated as though he
had not previously been convicted of one or more serious and/or
violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

---

[9]  *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

37

1   "In reviewing for abuse of discretion, we are guided by two
fundamental precepts.  First, "'[t]he burden is on the party
2   attacking the sentence to clearly show that the sentencing decision
was irrational or arbitrary.  [Citation.]  In the absence of such a
3   showing, the trial court is presumed to have acted to achieve
legitimate sentencing objectives, and its discretionary
4   determination to impose a particular sentence will not be set aside
on review.'"  [Citations.]  Second, a "'decision will not be reversed
5   merely because reasonable people might disagree.  'An appellate
tribunal is neither authorized nor warranted in substituting its
6   judgment for the judgment of the trial judge.'"'  [Citations.]  Taken
together, these precepts establish that a trial court does not abuse
7   its discretion unless its decision is so irrational or arbitrary that no
reasonable person could agree with it."  (*People v. Carmony*
8   (2004) 33 Cal.4th 367, 376-377 (*Carmony I*).)

9   The court's decision here is not so irrational or arbitrary.  After
reviewing defendant's motion, his probation report, and the
10   prosecution's statement in aggravation, the court denied the
motion due to the lack of evidence showing defendant had
11   sufficiently changed his lifestyle and due to the nature of his
current crime.  The court explained:  "I look at a *Romero* motion as
12   being akin to judicial clemency.  And the Court understands that it
has discretion in this case, but in order for there to be an exercise
13   of discretion, I view the issue as one that neither the defendant has
shown a material departure from a previous lifestyle indicating a
14   turnaround in his outlook towards his role in society and as being
an arrest-free, conviction-free person, and that's demonstrated by a
15   moment of period of time that we would be assured that he's going
to remain crime-free save except the existing crime.
16
"And secondly, the existing crime is one we can also take into
17   consideration, the facts surrounding the existing crime, and in this
particular case this is a fairly aggravated case of a 290, in my
18   opinion.  It is not a technical violation.  It is a deliberate violation,
and one in which I don't find the criteria necessary to seriously
19   consider the fact of the crime as leading toward the granting of
judicial clemency and so having weighed all those factors and
20   applying them up against the grid of the guided discretion that the
Court has, the Court will now confirm its ruling that the *Romero*
21   motion is denied."

22   The record shows the trial court considered whether defendant was
outside the spirit of Three Strikes in light of the nature and
23   circumstances of the present felony, his prior serious felony
convictions, and his background, character, and prospects.  Having
24   reviewed the same information, we conclude the court did not
reach its conclusion arbitrarily or irrationally.
25
26   Opinion at 32-35.

38

1       Petitioner's federal habeas challenge to the trial court's denial of his *Romero* motion

2  essentially involves an interpretation of state sentencing law.  As explained above, "it is not the

3  province of a federal habeas court to reexamine state court determinations on state law

4  questions."  *Wilson*, 131 S. Ct. at 16 (quoting *Estelle*, 502 U.S. at 67).  The sentencing judge in

5  this case declined to strike any of petitioner's prior convictions only after considering all of the

6  relevant circumstances and applying the applicable law.  As indicated by the California Court of

7  Appeal, the sentencing judge's conclusion that petitioner did not fall outside the spirit of

8  California's Three Strikes Law was not unreasonable under the circumstances of this case.  After

9  a careful review of the sentencing proceedings, the undersigned finds no federal constitutional

10  violation in the state trial judge's exercise of his sentencing discretion.[10]

11       The decision of the California Court of Appeal with respect to the application of state

12  sentencing law is not contrary to or an unreasonable application of federal law and does not

13  justify the granting of federal habeas relief.  Accordingly, petitioner is not entitled to relief on

14  this claim.

15               **8.**    **Cruel and Unusual Punishment**

16       Petitioner also argues that his sentence of twenty-eight years to life under the Three

17  Strikes Law constitutes cruel and unusual punishment, in violation of the Eighth Amendment.

18  Pet. for Review at 31-36.

19  /////

20  /////

21  /////

22  /////

23

24       [10]  If petitioner's sentence had been imposed under an invalid statute and/or was in excess of that actually permitted under state law, a federal due process violation would be presented.

25  *See Marzano v. Kincheloe*, 915 F.2d 549, 552 (9th Cir. 1990) (due process violation found where the petitioner's sentence of life imprisonment without the possibility of parole could not be constitutionally imposed under the state statute upon which his conviction was based).

26  However, petitioner has not made a showing that such is the case here.

1      In the published portion of its opinion, the California Court of Appeal denied this claim.

2      The court reasoned as follows:

3           Defendant contends his indeterminate life sentence for failing to
            register within five days of moving from Rocklin violates federal
4           and state constitutional prohibitions against cruel and/or unusual
            punishment.  We disagree.

5
            Our court has seen both sides of this issue.  In *People v. Carmony*
6           (2005) 127 Cal.App.4th 1066, 26 Cal.Rptr.3d 365 (*Carmony II*),
            we determined a 25-year-to-life sentence imposed on a registered
7           sex offender for failing to register within five days of his birthday
            was unconstitutional.  However, in *People v. Meeks* (2004) 123
8           Cal.App.4th 695, 20 Cal.Rptr.3d 445 (*Meeks*), we determined a 25-
            year-to-life sentence imposed on a registered sex offender for
9           failing to register within five days of changing his address was not
            unconstitutional.

10
            In both cases, we sought to determine under federal law whether
11          "an inference of gross disproportionality" (*Harmelin v. Michigan*
            (1991) 501 U.S. 957, 1005, 111 S.Ct. 2680, 2707, 115 L.Ed.2d
12          836, 871 (conc. opn. of Kennedy, J.)) could be made by weighing
            the crime and defendant's sentence "in light of the harm caused or
13          threatened to the victim or to society, and the culpability of the
            offender."  (*Solem v. Helm* (1983) 463 U.S. 277, 292, 103 S.Ct.
14          3001, 3011, 77 L.Ed.2d 637, 651.)

15          Similarly, we sought to determine under state law whether the
            sentence was so disproportionate to the crime that it "shocks the
16          conscience" in light of the defendant's history and the seriousness
            of his offenses.  (*In re Lynch* (1972) 8 Cal.3d 410, 424, 105
17          Cal.Rptr. 217, 503 P.2d 921.)

18          In *Carmony II*, we determined an inference of gross
            disproportionality existed.  "While a violation of section 290 is
19          classified as a felony," we wrote, "the instant offense was a
            passive, nonviolent, regulatory offense that posed no direct or
20          immediate danger to society.  Defendant committed this offense by
            violating the annual registration requirement (former § 290, subd.
21          (a)(1)(C)), having correctly registered the proper information the
            month before.  Obviously, no change had occurred in the
22          intervening period and defendant's parole agent was aware of this
            fact.  Thus, because defendant did not evade or intend to evade law
23          enforcement officers, his offense was the most technical and
            harmless violation of the registration law we have seen."
24          (*Carmony II*, *supra*, 127 Cal.App.4th at p. 1078, 26 Cal.Rptr.3d
            365.)

25

26   /////

"Although this requirement [to register annually] serves a legitimate purpose," we continued, "it is nevertheless a backup measure to ensure that authorities have current accurate information.  In this case, when defendant failed to register within five days of his birthday, he was still on parole, had recently updated his registration, had not moved or changed any other required registration information during the one month since he registered, and was in contact with his parole officer.  Therefore, his failure to register was completely harmless and no worse than a breach of an overtime parking ordinance.  [Citation.]"  (*Carmony II, supra*, 127 Cal.App.4th at p. 1079, 26 Cal.Rptr.3d 365.)

In light of these circumstances, and the fact that the defendant's three strikes offenses were remote in time and nature, we concluded the indeterminate life sentence was grossly disproportionate to the gravity of the offense.  (*Carmony II, supra*, 127 Cal.App.4th at p. 1081, 26 Cal.Rptr.3d 365.)

By comparison, in *Meeks*, we determined an inference of gross disproportionality did not exist.  In that case, the defendant, over the course of more than two years, had moved three times and lived for a period of time on the street without ever registering his new addresses or his transient status.  (*Meeks, supra*, 123 Cal.App.4th at pp. 700–701, 20 Cal.Rptr.3d 445.)

We concluded the indeterminate life sentence for his offense was no more disproportionate than the indeterminate life sentence upheld in *Ewing v. California* (2003) 538 U.S. 11, 123 S.Ct. 1179, 155 L.Ed.2d 108, for a third strike of grand theft for shoplifting three golf clubs.  "[Defendant] has violated a law that is intended to avoid, or at least minimize, the danger to public safety posed by those who have been convicted of certain sexual offenses.  It is at

least as serious as theft of three golf clubs."  (*Meeks, supra*, 123 Cal.App.4th at p. 708, 20 Cal.Rptr.3d 445.)

The *Carmony II* court distinguished the seriousness of the registration offense before it with the one before the *Meeks* court.  The *Carmony II* court noted "the offense committed by Meeks was not the technical violation committed by defendant.  Meeks failed to register after changing his residence and therefore, unlike in the present case, law enforcement authorities did not have Meek's correct address and information."  (*Carmony II, supra*, 127 Cal.App.4th at p. 1082, fn. 11, 26 Cal.Rptr.3d 365.; *see also Gonzalez v. Duncan* (9th Cir. 2008) 551 F.3d 875, 885 (*Gonzalez*) ["California courts have recognized that the distinction between a conviction for failure to register after a change of address . . . and a conviction for failure to update registration annually . . . is critical," citing *Meeks and Carmony II*.) ]

41

It is this distinction that supports the sentence given in this case. Unlike the failure in *Carmony II*, defendant's failure to register thwarted the fundamental purpose of the registration law, thereby leaving the public at risk.  "The purpose of the sex offender registration law is to require that the offender identify his present address to law enforcement authorities so that he or she is readily available for police surveillance." (*Carmony II, supra*, 127 Cal.App.4th at p. 1072, 26 Cal.Rptr.3d 365.)

The registration law's "mandate that sex offenders register any change of address relates directly to the state's interest in ensuring that it knows the whereabouts of its sex offenders.  As noted by the California Supreme Court, '[e]nsuring offenders are readily available for police surveillance depends on timely change-of-address notification.'  ([*Wright v. Superior Court* (1997) 15 Cal.4th 521, 527, 63 Cal.Rptr.2d 322, 936 P.2d 101] (internal quotation marks and citation omitted).)" (*Gonzalez, supra*, 551 F.3d at p. 884.)

Here, for a period of over eight months, defendant's whereabouts were unknown.  Even his federal parole officer did not know where he was.  He was drifting around the country and "hiding out with the hippies."  That is hardly a condition of being readily available for police surveillance.  Such blatant disregard of the registration act and complete undercutting of the act's purposes is a serious offense.

Defendant's failure to register when he left Rocklin and his thwarting the purpose of the registration act of being able to be located, coupled with the seriousness of his prior convictions and his sustained criminality, all demonstrate his sentence was not grossly disproportionate to his offense.  Under these circumstances, his sentence does not shock the conscience.  The sentence thus does not constitute cruel and/or unusual punishment under the federal or California Constitutions.

176 Cal.App.4th 428, 435-38 (2009).

The United States Supreme Court has held that the Eighth Amendment includes a "narrow proportionality principle" that applies to terms of imprisonment.  *See Harmelin v. Michigan*, 501 U.S. 957, 996 (1991) (Kennedy, J., concurring).  *See also Taylor v. Lewis*, 460 F.3d 1093, 1097 (9th Cir. 2006).  However, the precise contours of this principle are unclear, and successful challenges in federal court to the proportionality of particular sentences are "exceedingly rare."  *Solem v. Helm*, 463 U.S. 277, 289-90 (1983).  *See also Ramirez v. Castro*, 365 F.3d 755, 775 (9th Cir. 2004).  "The Eighth Amendment does not require strict

1    proportionality between crime and sentence.  Rather, it forbids only extreme sentences that are

2    'grossly disproportionate' to the crime."  *Harmelin*, 501 U.S. at 1001 (Kennedy, J., concurring)

3    (citing *Solem v. Helm*).  Thus, in *Lockyer v. Andrade*, the United States Supreme Court held that

4    it was not an unreasonable application of clearly established federal law for the California Court

5    of Appeal to affirm a "Three Strikes" sentence of two consecutive 25 year-to-life imprisonment

6    terms for a petty theft with a prior conviction involving theft of $150.00 worth of videotapes.

7    *Andrade*, 538 U.S. at 75.  In *Ewing v. California*, 538 U.S. 11, 29 (2003), the Supreme Court

8    held that a "Three Strikes" sentence of 25 years-to-life in prison imposed on a grand theft

9    conviction involving the theft of three golf clubs from a pro shop was not grossly

10   disproportionate and did not violate the Eighth Amendment.

11          In assessing the compliance of a non-capital sentence with the proportionality principle, a

12   reviewing court must consider "objective factors" to the extent possible.  *Solem*, 463 U.S. at 290.

13   Foremost among these factors are the severity of the penalty imposed and the gravity of the

14   offense.  "Comparisons among offenses can be made in light of, among other things, the harm

15   caused or threatened to the victim or society, the culpability of the offender, and the absolute

16   magnitude of the crime."  *Taylor*, 460 F.3d at 1098.[11]

17

18          [11]  As noted in *Taylor*, the United States Supreme Court has also suggested that reviewing
     courts compare the sentences imposed on other criminals in the same jurisdiction, and also
19   compare the sentences imposed for commission of the same crime in other jurisdictions.  460
     F.3d at 1098 n.7.  However,

20
            consideration of comparative factors may be unnecessary; the *Solem* Court "did
21          not announce a rigid three-part test."  *See Harmelin*, 501 U.S. at 1004, 111 S.Ct.
            2680 (Kennedy, J., concurring). Rather, "intrajurisdictional and interjurisdictional
22          analyses are appropriate only in the rare case in which a threshold comparison of
            the crime committed and the sentence imposed leads to an inference of gross
23          disproportionality."  *Id.* at 1004-05, 111 S.Ct. 2680; see also *Rummel v. Estelle*,
            445 U.S. 263, 282, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980) ("Absent a
24          constitutionally imposed uniformity inimical to traditional notions of federalism,
            some State will always bear the distinction of treating particular offenders more
25          severely than any other State.").

26   *Id.*

                                                    43

1    As noted by the California Court of Appeal, in *Gonzalez v. Duncan*, 551 F.3d 875 (2008),

2    the United States Court of Appeals for the Ninth Circuit concluded that a Three Strikes sentence

3    imposed for failing to annually register pursuant to Cal. Penal Code § 290 constituted cruel and

4    unusual punishment under the circumstances of that case. *Id.* at 884.  The court in *Gonzalez*

5    noted that the annual registration requirement violated by the defendant was only tangentially

6    related to the state's interest in ensuring that sex offenders are available for police surveillance,

7    and that it was merely a backup measure to ensure the authorities had accurate information about

8    the defendant. *Id.*  The court opined, however, that the address change requirement, which

9    petitioner violated in this case, was directly related to the state's interest in knowing the

10   whereabouts of its sex offenders. *Id.*  The *Gonzalez* court advised that the distinction between

11   the two registration requirements was "critical" to its analysis. *Id.* at 885.

12   Later, in *Crosby v. Schwartz*, 678 F.3d 784, 791-92 (9th Cir. 2012), the Ninth Circuit

13   held that a sentence of 26 years to life under California's Three Strikes Law for defendant's

14   failure to annually update his registration as a sex offender and his failure to register within five

15   days of a change of address did not constitute cruel and unusual punishment, in violation of the

16   Eighth Amendment.  The court again noted the distinction between the "mere technical" offense

17   of failing to update annually and the more serious offense of failing to register an actual change

18   of address. *Id.* at 793.  In *Crosby*, as in this case, the defendant "was no longer living at his last

19   registered address at the time of his arrest, and his failure to register impeded the police's ability

20   to find him for surveillance." *Id.* at 794.

21   Here, petitioner did not merely fail to update his registration.  Rather, he moved from his

22   registration address and failed to inform the authorities of his new address.  Petitioner's failure to

23   comply with the registration requirement was not a passive, harmless and technical violation of

24   the registration law because it "arose in the context of failing to register, not simply the formality

25   of an annual update to re-register the same information already provided." *White v. Dexter*, 2009

26   WL 1424373, at *18 n.11 (E.D. Cal. May 20, 2009).  Petitioner's failure to register his new

1   whereabouts was particularly significant given the violent nature of his prior convictions for

2   robbery, armed bank robbery, and forcible oral copulation.  *See Crosby*, 678 F.3d at 794 (taking

3   violent nature of prior offenses into account in gross disproportionality analysis).

4          In light of the *Harmelin* decision, as well as the decisions in *Andrade* and *Ewing*, which

5   imposed sentences of twenty-five years to life for petty theft convictions, and *Crosby*, which

6   imposed a sentence of twenty-six years to life for failing to register as a sex offender after a

7   change of address, the sentence imposed on petitioner is not grossly disproportionate.  Because

8   petitioner does not raise an inference of gross disproportionality, this court need not compare

9   petitioner's sentence to the sentences of other defendants in other jurisdictions.

10         The California Court of Appeal correctly identified the applicable federal law, and its

11  analysis of petitioner's Eighth Amendment claim was neither contrary to nor an unreasonable

12  application of that controlling authority.  Accordingly, this ground for relief should be denied.

13  **III.  Conclusion**

14         For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

15  application for a writ of habeas corpus be denied.

16         These findings and recommendations are submitted to the United States District Judge

17  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

18  after being served with these findings and recommendations, any party may file written

19  objections with the court and serve a copy on all parties.  Such a document should be captioned

20  "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

21  within the specified time may waive the right to appeal the District Court's order.  *Turner v.*

22  *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In

23  his objections petitioner may address whether a certificate of appealability should issue in the

24  event he files an appeal of the judgment in this case.  *See* Rule 11, Federal Rules Governing

25  /////

26  /////

45

1  Section 2254 Cases (the district court must issue or deny a certificate of appealability when it

2  enters a final order adverse to the applicant).

3  DATED:  August 6, 2013.

4

5                                    EDMUND F. BRENNAN
                                     UNITED STATES MAGISTRATE JUDGE
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26